UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HECTOR L. RODRIGUEZ,           :
    Plaintiff,                 :
                                :
    v.                          :       Civil No. 3:15cv514(VAB)
                                :
WARDEN ERFE, et al.            :
    Defendants.                :

**RULING ON MOTION TO DISMISS**

Plaintiff, Hector L. Rodriguez, incarcerated and *pro se*, initiated this action by filing a complaint under 42 U.S.C. § 1983 against Warden Erfe, Lieutenant Ballaro, Unit Manager/Captain Muzykoski and Correctional Officers Carlson, Devito and Savoie.[1]  On November 30, 2015, the court dismissed the claims against Defendants in their official capacities under 28 U.S.C. § 1915A(b)(2) and all claims against Warden Erfe under 28 U.S.C. § 1915A(b)(1).  *See* Initial Review Order, ECF No. 8.  The Court concluded that Mr. Rodriguez's claims for failure to protect and his deliberate indifference to safety claims under the Eighth Amendment should proceed against Ballaro, Muzykoski, Carlson, Devito, and Savoie.  *Id.*  The remaining Defendants move to dismiss the Complaint.  For the reasons set forth below, their motion is DENIED.

**I.     Factual Allegations**

Mr. Rodriguez alleges that, in March 2012, he shared a cell with an active gang member who was known to be violent.  Compl. at Stmt. of the Case ¶10, ECF No. 1.  Prior to March 24, 2012, Mr. Rodriguez allegedly sent written requests to Unit Manager/Captain Muzykoski explaining that he and his cellmate were not getting along and that he felt that his safety was in

---

[1] Counsel for Defendants informs the court that Plaintiff incorrectly listed Correctional Officer Savoie's name as Saviour, incorrectly listed Lieutenant Ballaro's name as Bollardi and incorrectly listed Unit Manager/Captain Muzykoski's name as Muzzi.  The court will refer to Defendants using the correct spelling of their last names.

jeopardy. *Id.* at ¶ 2, *see also* CN 9601 (Oct. 16, 2012), Pl.'s Response, Ex. A, ECF No. 22. In response, Unit Manager/Captain Muzykoski allegedly informed Mr. Rodriguez that part of the gang renunciation program involved living in a cell with an inmate from a different gang. Compl. at Stmt. of the Case ¶ 2. On March 21, 2012, Mr. Rodriguez allegedly spoke to Correctional Officer Savoie and requested that he be moved to another cell because he was having problems with his cellmate. *Id.* at ¶ 6. Correctional Officer Savoie allegedly informed Mr. Rodriguez that Lieutenant Ballaro would not approve his request to be moved to another cell. *Id.*

On March 24, 2012, Mr. Rodriguez's cellmate allegedly assaulted him with a diamond wedding ring that he used as a brass knuckle. Compl. at Stmt. of the Case ¶¶ 1, 3. Mr. Rodriguez alleges that he was "severely" beaten and "cut very badly" by the diamond ring, which the cellmate had affixed to his hand with tape. *Id.* at ¶ 3. As a result of this incident, Mr. Rodriguez allegedly suffered an injury to his eye and received stitches. *Id.* ¶¶ 1, 8. He is allegedly still experiencing blurred vision as a result of the incident and claims that his face is "disfigured" because there is a scar near his eye. *Id.*

Mr. Rodriguez alleges that correctional officers mishandled the March 24, 2012 incident, pointing to "numerous violations" by correctional staff that, he alleges, put his life in danger. First, Mr. Rodriguez alleges that Correctional Officer Carlson did not have his radio with him and could not immediately call a code when he observed Mr. Rodriguez and his cellmate fighting. *Id.* ¶¶ 1,5. Officer Carlson allegedly had to ask another staff member to call a code several minutes after the assault began. *Id.* ¶ 5. As a result, Mr. Rodriguez alleges, Officer Carlson merely "watched" the assault occur, without intervening on Mr. Rodriguez's behalf. Second, Mr. Rodriguez alleges that Officer Devito was not at his assigned post in the housing unit when the fight broke out. *Id.*

## II.     Standard of Review

When considering a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 169 (2d Cir. 2012).  In its review of the complaint, the court applies a "plausibility standard,'" which is guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  First, the requirement that a court accept as true the allegations in a complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).  Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief.  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The plausibility standard "does not impose a probability requirement at the pleading stage, it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting a plaintiff's claim for relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007).  Furthermore, even under this standard, courts must liberally construe a *pro se* complaint.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In ruling on a motion to dismiss under Rule 12(b)(6), the Court considers the facts alleged in the complaint, documents either attached to the complaint or incorporated into it by reference, "and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III.     Discussion

Defendants move to dismiss the complaint on the ground that all claims are barred by the statute of limitations.  Defendants contend that the complaint was not filed until April 8, 2015,

3

the date it was received by the clerk. Def.'s Mot. to Dismiss, ECF No. 21-1, 4-5. Because the incident giving rise to the claims of failure to protect and deliberate indifference to safety occurred on March 24, 2012, Defendants argue that all claims are barred by Connecticut's three-year statute of limitations for personal injury, which applies to this action. *Id.* Mr. Rodriguez has filed a response to the motion to dismiss, but does not address Defendants' argument that his Complaint was untimely. *See* Pl.'s Response. The Court disagrees with Defendants' argument and concludes that the case may move forward because of the prison mailbox rule.

A federal court looks to state law to determine the "most appropriate or most analogous" applicable statute of limitations in a section 1983 action. *Walker v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005) (quoting *Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994)). The Second Circuit has held that the general personal injury statute of limitations set forth in Connecticut General Statutes § 52-577 should be applied to the filing of section 1983 claims arising in Connecticut. *Lounsbury*, 25 F.3d at 134. Section 52-577 sets a three-year limitations period running from "the date of the act or omission complained of." Conn. Gen. Stat. § 52-577.

Although a federal court looks to state law to determine the applicable statute of limitations for claims arising under section 1983, it must look to federal law to determine when a federal claim accrues. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("While we have never stated so expressly, the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law."). A section 1983 cause of action generally accrues "when the plaintiff knows or has a reason to know of the harm that is the basis of the action." *Singleton v. New York*, 632 F.2d 185, 191 (2d Cir. 1980).

The Second Circuit has created a special rule for determining the timeliness of papers submitted by incarcerated *pro se* litigants, citing the unique difficulties faced by these plaintiffs. *See Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993). Under the "prison-mailbox rule," a *pro se*

prisoner's complaint is deemed filed on the date that he or she delivered the complaint to prison officials for transmittal to the court, rather than the date on which the Court received the papers. *Id.* at 681 (finding that pro se prisoner's argument regarding the date he delivered his complaint to prison officials was "substantiated by a copy of the Department of Correctional Services form demonstrating that he had submitted his legal papers to prison officials prior to the official filing of the complaint") (citing *Houston v. Lack,* 487 U.S. 266, 270 (1988)).

Courts in this Circuit have assumed that a prisoner hands his or her petition or complaint to a prison staff member to be mailed or e-filed to the court on the date that the prisoner signed it. "In the absence of other evidence as to when the prisoner actually delivered his complaint to prison officials, this Court looks to the date when the complaint was signed." *Lehal v. United States*, No. 13cv3923, 2015 U.S. Dist. LEXIS 173610, at *50 (S.D.N.Y. Dec. 29, 2015); *see also Nash v. Kressman,* No. 11 Civ. 7327, 2013 WL 6197087, at *4 (S.D.N.Y. Nov. 27, 2013) (complaint deemed to have been mailed to court and filed on date appearing on cover letter accompanying complaint); *Torres v. Irvin,* 33 F. Supp. 2d 257, 270 (S.D.N.Y.1998) (assuming that prisoner gave his habeas petition to prison officials on the date that he signed it, and collecting cases).

In February 2015, Mr. Rodriguez was incarcerated at Corrigan-Radgowski Correctional Institution ("Corrigan"). On February 23, 2015, he signed his Complaint, his application to proceed *in forma pauperis*, and his motion for appointment of counsel. *See* ECF Nos. 1-3. All three documents were received by the court on April 8, 2015, and file-stamped on that date, suggesting that they were all mailed together to the court. Mr. Rodriguez's motion for appointment of counsel includes a certification that he mailed it to the court on February 25, 2015. *See* Mot. Appoint Counsel, ECF No. 3 at 6-7. The application to proceed *in forma pauperis* includes Mr. Rodriguez's inmate account statement covering a period from July 10,

5

2014 to February 25, 2015, and a prison account balance statement which was certified by a correctional officer on March 3, 2015.  *See* Application to Proceed *In Forma Pauperis*, ECF No. 2 at 5-9.

Absent evidence to the contrary and giving Mr. Rodriguez the benefit of the doubt, the court assumes that he handed his Complaint, application to proceed *in forma pauperis*, and motion for appointment of counsel to prison officials at Corrigan for mailing on March 3, 2015, the date on which the prison officer certified the account balance statement included in the application to proceed *in forma pauperis*.  *See Bourguignon v. Armstrong*, No. 6-0259 (WIG), 2007 U.S. Dist. LEXIS 63388, at *4-5 (D. Conn. Aug. 28, 2007) (concluding, when applying the "mailbox rule," that the earliest possible date the defendant could have given the packet of documents to correctional officials for mailing was the latest of the dates on the complaint, the motion to proceed *in forma pauperis*, and the inmate trust account statement, given that all of the documents reached the court on the same date); *JCG v. Ercole*, No. 11 CIV. 6844 CM JLC, 2014 WL 1630815, at *4 (S.D.N.Y. Apr. 24, 2014) (complaint and *in forma pauperis* application deemed to have been mailed to the court and filed on date listed *in forma pauperis* application (even though date was after date of complaint) because receipt of both documents by the court on the same date suggested they were mailed together on the same date), *report and recommendation adopted*, No. 11-6844 CM JLC, 2014 WL 2769120 (S.D.N.Y. June 18, 2014); *Nash,* 2013 WL 6197087, at n.5 (finding that filing date was date of cover letter attached to complaint as opposed to earlier date listed on complaint because all documents were sent, stamped, and filed together).

Accordingly, the complaint is deemed to have been filed as of March 3, 2015, and the claims in the complaint are not barred by the three-year statute of limitations.  The motion to dismiss is DENIED.

**IV.**     **Conclusion**

The Motion to Dismiss on the ground that the claims are barred by the statute of limitations [**ECF No. 21**] is **DENIED**.

SO ORDERED this 30th day of January, 2017, at Bridgeport, Connecticut.

      /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE